IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN

In re:

Dome Corporation of North America,

          Debtor.

_____/

Chapter 7
Case No. 20-20759-dob
Hon. Daniel Opperman

## JOINT MOTION TO APPROVE SETTLEMENT REGARDING SECURED STATUS AND VALIDITY AND PRIORITY OF LIENS

Now comes Randall Frank, the Chapter 7 Trustee (the "**Trustee**") for Dome Corporation of North America (the "**Debtor**"), and Fifth Third Bank, National Association ( the "**Bank**"), by their respective counsel and by this motion (herein the "**Motion**") jointly request that the Court enter an Order, in the form attached hereto, approving a settlement between the Trustee and the Bank with respect to the secured status of the Bank's claim against the Debtor, and the validity and priority of the liens and security interests granted by the Debtor in favor of the Bank prior to the Petition Date. In support of the Motion, the Trustee and the Bank jointly state and agree as follows:

1. The Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "**Code**") on April 24, 2020 (the "**Petition Date**") commencing the above captioned Case (the "**Case**").

2. As of the Petition Date, the Debtor was obligated to the Bank pursuant to the terms of that certain Revolving Note dated as of May 6, 2019 (the "**Revolving Note**"), and certain Security Agreements dated as of April 1, 2011 and May 6, 2014 (collectively the "**Security Agreements**"). Prior to the Petition Date, the Bank filed financing statements and

1

continuation statements in respect of the Debtor, specifically and properly identifying the property described in the Security Agreements as the "Collateral", and as of the Petition Date, no financing statements were of record in respect of the Debtor except the financing statements filed by the Bank. For purposes of this Motion, except as otherwise expressly set forth herein with respect to the Rolling Stock (as herein defined) all such property described as Collateral under the terms of the Security Agreements, including the cash proceeds thereof, is referred to as the "**Pre-Petition Collateral**", and the Revolving Note and the Security Agreements, and any other documents relating thereto from time to time delivered in favor of the Bank by the Debtor are referred to collectively as the "**Loan Documents**".

3. On the Petition Date, the total outstanding amount of the Obligations (as defined in the Revolving Note) owed by the Debtor to the Bank, inclusive of principal, and accrued but unpaid interest as of such date was $872,084.37 (collectively the "**Pre-Petition Indebtedness**").

4. On the Petition Date the Debtor's property, all of which constitutes property of the estate under Section 541 of the Code, included, without limitation, the following (collectively, herein, the "**Property**"):

    (a) Cash on deposit at the Bank in the amount of $22,046.86 (the "**Fifth Third Deposit**").

    (b) Cash on deposit at the Wildfire Credit Union in the amount of $162,154.86 (the "**Wildfire Deposit**").

    (c) Accounts receivable, and the proceeds thereof, owed to the Debtor as of the Petition Date in respect of work performed by the Debtor in the ordinary course of business prior to the Petition Date, and which are not subject to the known claims of any other person or entity, including any creditor of the Debtor. (collectively, the "**Accounts Receivable**").

    (d) Certain machinery, equipment, furniture and other miscellaneous personal property (collectively, the "**Equipment**") The Equipment excludes all rolling stock of the Debtor evidenced by certificates of title under applicable state law (the "**Rolling Stock**").

(e) Anticipated federal tax refunds arising in respect of the Debtor's amended tax returns for years 2018 and prior in the aggregate amount of $916,791 (collectively the "**Prior Year Federal Tax Refunds**"), an anticipated federal tax refund arising in respect of 2019 the amount of $28,000 (the "**2019 Federal Tax Refund**") and anticipated state and local tax refunds from multiple jurisdictions in respect of calendar year 2019 in the aggregate amount of $12,142 (collectively the "**State Tax Refunds**").

(f) Miscellaneous insurance refund claims, and other insurance claims arising prior to the Petition Date on account of stolen or damaged Equipment, as set forth in Sections 8 and 73 of the Debtor's Schedule A/B (collectively the "**Reimbursement Claims**").

5. Since the Petition Date, the Trustee has received the cash proceeds of the collection of certain Accounts Receivable in the amount of $43,392.00, and the cash proceeds of a Reimbursement Claim in the amount of $9,391.93 (collectively the "**Post-Petition Collections**"). To the best knowledge of the Bank and the Trustee, the Post-Petition Collections are not subject to the known claims of any other person or entity, including any creditor of the Debtor.

6. The Bank asserts that it held, as of the Petition Date, a validly perfected first priority lien and security interest in all of the Property, and the proceeds thereof. The Trustee has disputed the Bank's assertion with respect to the Prior Year Federal Tax Refunds and has disputed the Bank's assertion that the proceeds comprising the Wildfire Deposit are identifiable cash proceeds of Pre-Petition Collateral.

7. The Bank has demanded that the Trustee consent to the setoff of the Fifth Third Deposit, and deliver the Wildfire Deposit, and the proceeds of the Post-Petition Collections to the Bank. The Trustee has conditioned his consent to doing so upon resolution of all matters relating to the validity and priority of the Bank's lien and security interest in the Property. The Trustee has requested that the Bank consent to the Trustee's proposed sale of the Equipment and

3

to the sharing of the proceeds of such sale, and that the Bank agree that it holds no lien or security interest in the Prior Year Federal Tax Refunds. The Bank has conditioned its consent to the Trustee's request upon resolution of all matters relating to the validity and priority of the Bank's lien and security interest in the Property and the delivery of the Wildfire Deposit, and the proceeds of the Post-Petition Collections to the Bank.

8. The Trustee and the Bank have discussed their respective positions with respect to the foregoing matters, and exchanged certain supporting information and documentation. Based upon such discussions, the Trustee and the Bank have reached a settlement, subject to the approval of the Court, that addresses the lien priority issues, disposition of the Property, the allowance of the Bank's claim in the Debtor's Case, and other related matters, as set forth below. The terms of the proposed settlement (the "**Settlement**") are as follows:

>	(a) The Trustee agrees that the Fifth Third Deposit is subject to the unavoidable first priority lien and security interest of the Bank. The automatic stay shall be deemed modified as of the date of the approval of the Settlement to permit the Bank to setoff the Fifth Third Deposit, and to apply the proceeds of such setoff to the Pre-Petition Indebtedness.

>	(b) The Trustee agrees that the Post-Petition Collections and the Wildfire Deposit are subject to the unavoidable first priority lien and security interest of the Bank, and not subject to the known claims of any other person or entity, including any creditor of the Debtor. Within five Business Days of the entry of a final and non-appealable order approving the Settlement as set forth herein, the Trustee will pay to the Bank the entire amount of (i) the Post-Petition Collections, and (ii) the Wildfire Deposit, and the Bank shall be authorized to apply the proceeds of such payment to the Pre-Petition Indebtedness. To the extent the Trustee shall, after June 30, 2020 receive the proceeds of any additional Reimbursement Claims, such amounts shall be retained by the Trustee for the benefit of the estate, including, without limitation, any unsecured claim of the Bank, free and clear of any lien or security interest of the Bank, notwithstanding any of the terms and conditions of the Loan Documents. For purposes hereof the term "**Business Day**" means a day that the Bank is open for business in the State of Michigan.

>	(c) The Trustee agrees that the 2019 Federal Tax Refund and the State Tax Refunds are subject to the unavoidable first priority lien and security interest

4

of the Bank. Within 10 Business Days of receipt by the Trustee, the Trustee will pay to the Bank the amount of the 2019 Federal Tax Refund and the State Tax Refunds, and the Bank shall be authorized to apply the proceeds of such payment to the Pre-Petition Indebtedness.

(d) The Trustee agrees that the Accounts Receivable and the proceeds thereof are subject to the unavoidable first priority lien and security interest of the Bank and not subject to the known claims of any other person or entity, including any creditor of the Debtor. Within 10 Business Days of receipt by the Trustee, the Trustee will pay to the Bank the proceeds of all additional post-petition collection of Accounts Receivable received by the Trustee after June 30, 2020, up to $30,000, and the Bank shall be authorized to apply the proceeds of such payment to the Pre-Petition Indebtedness. Any proceeds of additional Accounts Receivable received by the Trustee from and after June 30, 2020 and in excess of $30,000 shall be retained by the Trustee for the benefit of the estate, including, without limitation, any unsecured claim of the Bank, free and clear of any lien or security interest of the Bank, notwithstanding any of the terms and conditions of the Loan Documents.

(e) The Trustee agrees that the Equipment is subject to the unavoidable senior lien and security interest of the Bank. The Bank will be deemed to have consented, effective as of June 30, 2020 to the Trustee's proposed sale of the Equipment to Ross Lake for gross sale proceeds of $92,000, free and clear of the lien and security interest of the Bank, subject to approval of the Bankruptcy Court (the "**Equipment Sale**") The Bank's lien and security interest in the Equipment shall be transferred to the proceeds of the Equipment Sale in accordance with Section 363(f) of the Code, and the Trustee shall pay to the Bank $75,000 from the proceeds of the Equipment Sale (the "**Bank Proceeds**") in satisfaction of the Bank's lien and security interest in the Equipment. The Bank Proceeds shall be delivered to the Bank not later than 10 Business Days after the Trustee's receipt of the proceeds of the Equipment Sale and the Bank shall be authorized to apply the proceeds of such payment, upon receipt, to the Pre-Petition Indebtedness. The remainder of the sale proceeds of the Equipment shall be retained for the benefit of the estate, including, without limitation, any allowed unsecured claim of the Bank, free and clear of any lien or security interest of the Bank notwithstanding any of the terms and conditions of the Loan Documents. The order of the Bankruptcy Court approving the Equipment Sale shall be subject to the review and consent of the Bank. In connection with the Equipment Sale, no costs or expenses of any kind, including, without limitation, professional fees of the Trustee's professionals shall be payable from the Bank Proceeds, or by the Bank.

(f) The Trustee agrees that the Bank holds an allowed claim in the Debtor's Case in the amount of $872,084.37 that is not subject to offset, recoupment, counterclaim, deduction, or defense of any nature or kind (the "**Bank Claim**"), that the Bank Claim shall be deemed to be an allowed secured claim as

5

of the Petition Date in an amount equal to the total amount actually received by the Bank pursuant to Section 8(a)-(e) above, and that the remainder of the Bank Claim shall be deemed to be an allowed unsecured claim as of the Petition Date. The Bank shall file a proof of claim in an amount consistent with this Section 8(f) in accordance with any prior bar date notice or order in this Case, and such proof of claim may be from time to time amended based upon the timing and final amount of distributions to the Bank under Section 8(a)-(e) above, and be deemed automatically allowed as so amended, without further order of the Bankruptcy Court. The Bank Claim as set forth in this Section 8(f) shall not be subject to disallowance for any reason. The Bank waives and agrees not to assert any claim in the Case pursuant to Section 506(b) of the Code.

(g) 100% of the proceeds of the Prior Year Federal Tax Refunds shall be retained by the Trustee for the benefit of the estate, including, without limitation, any allowed unsecured claim of the Bank, free and clear of any lien or security interest of the Bank, notwithstanding any of the terms and conditions of the Loan Documents.

(h) The Trustee, on behalf of the estate, (i) waives and releases any claims of any kind arising under the Code, other federal law, or state law in respect of the Bank, and its successors and assigns, and their officers, agents, employees, representatives and attorneys, the Pre-Petition Collateral, and the proceeds of the Pre-Petition Collateral arising in connection with the Debtor or the Case, including, without limitation, claims under Sections 506(c), 510, 542, 544, 547, 548, 549, and 550 of the Code, (ii) agrees that the Bank Claim as outlined above is not subject to subordination, and, to the extent an unsecured claim, shall be paid (to the extent any unsecured claims in the Case are paid) pro-rata and on the same priority with all other allowed unsecured claims in accordance with the priorities of the Code, and (iii) agrees that no amounts payable to the Bank pursuant to Section 8(a)-(e) hereof shall be subject to (A) reduction for any reason under the Code or applicable law, including, without limitation, on account of Section 326 of the Code, or (B) any further claim of any kind by the Trustee on behalf of the estate or its creditors.

(i) The Trustee, on behalf of the estate, acknowledges that the Bank has not at any time agreed to provide, and the agreement of the Trustee and the Bank comprising the Settlement shall not be deemed or construed to require the Bank to provide, any financial accommodation, or to make any loan, or provide any funding of any kind, to the Trustee in connection with the Case. The Bank shall not be liable for, independently pay, or provide funding for, any claims or expenses arising or payable at any time in the Case under Section 503 of the Code (herein "**Administrative Expenses**"). The Settlement does not constitute a "carveout" by the Bank for the payment of any Administrative Expenses, does not constitute the agreement or independent undertaking of the Bank to at any time pay any Administrative Expenses, and does not create direct or indirect liability of the Bank of any kind to the Trustee, the Debtor's estate, any creditor, or any other

person or entity on account of any Administrative Expenses or otherwise. The Trustee affirmatively waives any rights under Section 506(c) of the Code with respect to the Bank and the Pre-Petition Collateral and is prohibited from asserting that any Administrative Expenses may be imposed upon the Bank or the Pre-Petition Collateral pursuant to Section 506(c) of the Code or otherwise.

(j)     Except as expressly described in this Section 8, the Settlement is without prejudice to any rights and defenses that may inure to the Bank, whether as a creditor of the Debtor, or otherwise. The Settlement shall only become effective upon entry of a final order of the Bankruptcy Court approving the Settlement which is reasonably acceptable to each of the Bank and the Trustee. The automatic stay is deemed to be modified as necessary to implement the Settlement. All amounts distributed to the Bank under Settlement shall be paid to the Bank by check which shall be made payable to the Bank, and delivered in care of its counsel as follows:

> Daniel F. Gosch
> Dickinson Wright PLLC
> 200 Ottawa Ave NW
> Suite 1000
> Grand Rapids, Michigan  49503

(k)     The Trustee and the Bank intend that the terms of this Section 8 set forth the terms of a settlement agreement between them, which shall be enforceable in upon entry of an Order of the Court approving the Settlement pursuant to Bankruptcy Rule 9019.

9.      In accordance with Bankruptcy Rule 9019, "after notice and a hearing, the court may approve a compromise or settlement". Approval of a settlement is within the discretion of the Court, and requires that the Court make a determination that the proposed settlement is fair and equitable, and in the best interests of the estate. See generally In re Kaiser Aluminum Corp., 339 BR 91 (Bankr. D. Del. 2006), and In re Air Safety International L.C. 336 BR 843 (Bankr. S.D. FL 2005). Compromises are favored in bankruptcy because they minimize litigation costs and expedite the administration of a bankruptcy estate. See generally, Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

10.     The Settlement is in the best interests of the Debtor's estate and all creditors. The context of the Case presented, among other things, disputed questions of whether monies moved

7

from the Debtor's pre-petition accounts at the Bank to the Wildfire Credit Union had been commingled with funds that might not have constituted proceeds of the Pre-Petition Collateral, and whether the Bank's pre-petition liens and security interests attached to the Prior Year Federal Tax Refunds. Resolution of the former issue required the detailed evaluation of books and records of the Bank, the Wildfire Credit Union, and the Debtor. Resolution of the latter issue required a detailed legal analysis of whether the timing of the enactment of the "Cares Act" in late March, 2020, created a basis for the Trustee to assert that the Bank's lien, as it pertained to the Prior Year Federal Tax Refunds, was potentially avoidable under Section 547 of the Code. The Bank and the Trustee disputed these matters.

11. Given the dollar amounts at issue, there was significant incentive for the parties to consider litigation to resolve these disputes. Such litigation was highly likely to take significant time, and to create significant administrative expense for the estate, especially in light of the provisions of Section 506(b) of the Code. Moreover, the timing of the liquidation of the estate was also negatively impacted, from the perspective of both the Bank and the Trustee, by the time required to resolve these issues. Accordingly, after extended discussions, and taking into account the extent of the Bank's potential unsecured claim in the Case, the Bank and the Trustee agreed to the Settlement in order to (a) expedite and simplify the liquidation of the Property and the overall resolution of the Case, and (b) avoid further costs and potential litigation, which would have negatively impacted the potential recovery for all creditors.

12. Under the terms of the Settlement, the Bank will forego the right to assert that it holds a lien and security interest in the Prior Year Federal Tax Refunds, relying instead upon its right to share in that recovery as an unsecured creditor, and agrees to share proceeds of the liquidation of certain of the Property with the estate, to offset liquidation costs relating to the

Pre-Petition Collateral. This is a material concession, as a determination in favor of the Bank with respect to the Prior Year Federal Tax Refunds would have resulted in a determination that the Bank was oversecured for purposes of Section 506(b) of the Code. Thus, by limiting the Bank's senior secured claim in this fashion, the Settlement directly enhances the Debtor's estate. In exchange for agreeing to the Settlement, the Bank receives (i) immediate payment of account of its secured claim, including payment to the Bank of the Wildfire Deposit (which the Trustee agrees consists of the identifiable cash proceeds of the Pre-Petition Collateral), (ii) an agreement as to the allowability of its general unsecured claim, and (iii) a release with respect to any claims of the Estate under the avoiding powers, and under Section 506(c) of the Code, so as to clarify that the Bank has no obligation to the estate for costs of administration in the Case.

13. For all of the foregoing reasons, the Settlement, which has been negotiated in good faith and at arms-length between the Bank and the Trustee, is in the best interests of the Debtor's estate and the Bank. Accordingly, the Court should approve the Settlement, on the terms set forth in the attached Order. The Trustee has given notice of this Motion to all creditors of the Debtor's estate, in accordance with the requirements of Bankruptcy Rule 9019.

WHEREFORE, the Bank and the Trustee jointly request that the Court enter the proposed Order attached hereto as Exhibit "A" approving the Settlement, for the reasons set forth above.

Respectfully Submitted,

Dated: 7/17, 2020      By: /s/ Henry L. Knier, Jr
Henry L. Knier, Jr. (P46393)
Smith, Martin, Powers & Knier, P.C.
Attorney for Trustee
900 Washington Ave.
P.O. Box 219
Bay City, MI 48707
(989) 892-3924
hknier@smpklaw.com

Dated: 7/17, 2020      By: /s/ Daniel F. Gosch    *by HLK w/ email consent*
Daniel F. Gosch (P35495)
Dickinson Wright PLLC
Attorneys for Fifth Third Bank National Association
200 Ottawa Ave. NW
Suite 900
Grand Rapids, Michigan 49503
dgosch@dickinsonwright.com